Case 6:17-cv-00032-NKM-RSB Document 18 Filed 08/14/18 Page 1 of 14 Pageid#: 691

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

8/14/2018

JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
        DEPUTY CLERK

That IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **ERIKA L.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) Civil Action No. 6:17-cv-32 |
| | ) |
| v. | ) |
| | ) **By: Hon. Robert S. Ballou** |
| **NANCY A. BERRYHILL,** | ) **United States Magistrate Judge** |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Erika L. ("Erika") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Erika alleges that (1) the administrative law judge ("ALJ") failed to properly consider her hand impairments; (2) the ALJ erred in giving partial weight to the opinion of her treating physician; and (3) new evidence submitted to the Appeals Council warrants remand. I find that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Erika's Motion for Summary Judgment (Dkt. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Erika failed to demonstrate that she was disabled under the

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Erika filed for DIB on October 3, 2013, claiming that her disability began on September 3, 2013. R. 130. The Commissioner denied Erika's application at the initial and reconsideration levels of administrative review. R. 62, 72. On January 4, 2016, ALJ Mary C. Peltzer held an administrative hearing to consider Erika's disability claim, which included testimony from Erika, her attorney, and vocational expert Robert Jackson. R. 29–54.

On January 21, 2016, the ALJ entered her decision analyzing Erika's claim under the familiar five-step process,[3] and denying her claim for benefits. R. 15–24. The ALJ found that Erika suffered from the severe impairments of systemic lupus erythematosus with

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

antipospholipid syndrome and chronic kidney disease. R. 17. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 18. The ALJ further found that Erika had the residual functional capacity ("RFC") to perform a range of light work, except that she can (1) frequently stoop, kneel, crouch, handle, finger, and climb ramps and stairs; (2) occasionally crawl and be exposed to workplace hazards such as dangerous moving machinery; (3) never climb ladders, ropes, or scaffolds or be exposed to unprotected heights and operating machinery with exposed moving parts; and (4) only work "in a static work environment where changes in tasks are infrequent and explained when they do occur." R. 18.

The ALJ determined that Erika is incapable of performing her past relevant work as a hospital cook. R. 23. However, the ALJ found that Erika could perform competitive work that exists in significant numbers in the national economy, such as an usher/lobby attendant or a counter clerk. R. 24. Therefore, the ALJ concluded that Erika is not disabled. Id.

Erika requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied her request for review. R. 1–3. This appeal followed.

## ANALYSIS

Erika alleges that that (1) the ALJ failed to properly consider her hand impairments; (2) the ALJ erred in giving partial weight to the opinion of her treating physician; and (3) new evidence submitted to the Appeals Council warrants remand.

**Medical Evidence Prior to the Relevant Period**[4]

Erika was diagnosed with lupus in 2006. R. 578. A kidney biopsy conducted in 2008 revealed Class II lupus nephritis. Id. Erika's lupus primarily manifested with a rash, joint pain, and pleurisy. Id.

---

[4] The relevant period spans from September 3, 2013—Erika's alleged date of onset of disability—to January 21, 2016—the date of the ALJ's decision.

3

On April 6, 2012, Erika saw Laura E. Yount, M.D., reporting that she "felt off." R. 519. Erika presented with expressive aphasia and tachycardia. Id. Dr. Yount explained that Erika's tachycardia symptoms resolved during the visit. R. 520. Dr. Yount proceeded with a "stroke workup," referring Erika to neurology and ordering an MRI, MRA, and echocardiogram with a bubble study. R. 520. On April 12, 2012, Manuel T. Peralta, M.D., confirmed that Erika suffered a stroke six days prior. R. 435. Dr. Peralta explained that Erika only reported issues affecting her speech. Id. Dr. Peralta prescribed Coumadin and referred Erika to speech therapy classes. Id. Dr. Peralta stated that Erika was "much better today compared to 6 days ago." Id.

On May 9, 2012, Erika saw Maya Ghaemmaghami, M.D., for advice on anticoagulation. R. 504. Dr. Ghaemmaghami explained that an MRI conducted on April 9, 2012 showed a left-sided stroke. Id. Dr. Ghaemmaghami stated that Erika was "doing quite well and working and doing all of her usual activities." Id.

Erika was discharged from speech therapy on May 21, 2012 after seven sessions. R. 503. Yvonne Staton, M.S., explained that Erika's communication skills were within normal limits, and stated that Erika "began re-employment within the last week of her therapy[ and] reported effective usage of her communication in the work environment." Id.

Erika returned to Dr. Ghaemmaghami for a six-month checkup on November 12, 2012. R. 337. Dr. Ghaemmaghami noted a history of anemia, thrombocyptopenia, nephritis, and anthralgias. Id. Overall, Dr. Ghaemmaghami stated that Erika was "doing very well" and that "[h]er lupus is under control with her current medications." Id. Physical examination revealed normal results, although Erika presented with a "slight cushingoid appearance." R. 338. Dr. Ghaemmaghami recommended that Erika remain on Coumadin for life because of her continued clotting risk. Id.

**Medical Evidence During the Relevant Period**

On September 11, 2013, Erika went to the emergency room, reporting confusion while driving and a sharp, right-sided headache. R. 252. Erika had a normal physical examination except for "mild give-way weakness in all four extremities." Id. Dr. Yount explained that Erika's episode of confusion had resolved. R. 253. Dr. Yount ordered an EEG, explained that a brain MRI "is not unreasonable," and agreed to discharge Erika if both returned negative results. Id. Erika was discharged the next day after she refused a brain MRI. She had a "[h]ead CT [which] did not show any acute process," and an EEG which showed no acute processes. R. 254.

On December 31, 2013, Erika saw Kalpita M. Haiti, MBBS, who explained that the results of the September 2013 CT scan showed that Erika had not suffered a new stroke. R. 300. Erika reported aches primarily in her knees, and that cold weather makes her joints hurt. Id. Physical examination revealed mild tenderness over the medial joint line in Erika's right knee and mild "swan neck" changes of her right fingers, but findings were otherwise normal. R. 302.

Erika returned to Dr. Haiti on March 27, 2014, reporting that her arthritis and hand stiffness were worse. R. 294. Physical examination revealed mild tenderness over the medial joint line in Erika's right knee and mild swan neck changes of her right fingers, but findings were otherwise normal. R. 296. Dr. Haiti advised Erika to use Tylenol and topical creams for her joint pain, and to start exercising regularly to increase muscle strength. R. 297.

Erika saw Dr. Haiti on June 4, 2014, reporting chest pain, morning stiffness, and shortness of breath upon exertion. R. 288. Erika complained of chest tightness and pain, joint pain, and headaches that are relieved by Tylenol. R. 289. Physical examination revealed mild tenderness over the medial joint line in Erika's right knee and mild swan neck changes of her

right finger, but findings were otherwise normal. R. 289–90. Dr. Haiti noted that joint pain is a "major malfunction of her [lupus]," and prescribed Methotrexate. R. 290.

Erika saw Dr. Peralta for an annual wellness exam on April 21, 2015. R. 381. Dr. Peralta explained that Erika felt well with minor complaints, had decreased energy, and slept poorly but for a full eight hours every night. Id. Dr. Peralta noted joint pain, myalgia, and back pain. R. 382. Physical examination revealed swan neck deformity in Erika's hands, but no joint swelling. R. 383. Dr. Peralta encouraged Erika to eat better, exercise more, and maintain a healthy weight. Id.

On September 8, 2015, Erika saw Dylan Nicole Deal, M.D., for pain in her hands. R. 570. Erika reported intolerance to cold in her fingers, and that grasping is difficult and painful. Id. Dr. Deal found swan neck deformities of all fingers with no swelling and normal strength and range of motion. R. 572. Dr. Deal explained that Erika could form a full composite fist. Id. Dr. Deal advised Erika to keep her hands warm and use a Paraffin bath. Id. Dr. Deal prescribed splints for Erika's fingers, and she was fitted for splints that day by Timothy Kibler, OT. R. 572–74.

Erika saw Gitanjali Khurana, MBBS, on November 15, 2015. She had no pain, tenderness, or synovitis in her fingers, metacarpophalangeal joints, wrists, elbows, hips, knees, or ankles. R. 582–83. Dr. Khurana found swan neck changes in Erika's fingers. Id. Labs revealed leucopenia with lymphopenia, which Dr. Khurana stated he would "monitor closely." R. 584.

**State Agency Medical Opinions**

On March 13, 2014, at the initial level of administrative review, state agency physician William Amos, M.D., explained that Erika can (1) lift and carry 25 pounds frequently and 50 pounds occasionally; (2) sit, stand, and walk for about six hours in an eight-hour workday;

6

(3) frequently stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; and (4) balance unlimitedly. R. 58–59. Dr. Amos stated that Erika has no manipulative, visual, communicative, or environmental limitations, although she does have postural limitations due to joint pain caused by lupus. R. 59. The ALJ gave little weight to this opinion because evidence at the administrative hearing showed that Erika was more limited than Dr. Amos suggested. R. 22.

On September 30, 2014, Carolina Bacani-Longa, M.D., explained at the reconsideration level of administrative review that Erika was much more limited than Dr. Amos suggested. R. 67–69. Dr. Bacani-Longa wrote that Erika can (1) lift and carry 10 pounds frequently and 20 pounds occasionally; (2) sit, stand, and walk for about six hours in an eight-hour workday; (3) frequently stoop, kneel, crouch, crawl, and climb ramps and stairs; (4) occasionally climb ladders, ropes, and scaffolds; and (5) balance unlimitedly. R. 67–68. Regarding manipulative limitations, Dr. Bacani-Longa explained that Erika can feel and reach in any direction unlimitedly and is limited to frequently fingering and handling with her right hand due to swan neck deformity. R. 68–69. Dr. Bacani-Longa stated that Erika must avoid concentrated exposure to extreme cold, wetness, and hazards such as machinery and heights. R. 69. The ALJ gave this opinion great weight because it is "balanced and supported in view of [the] evidence of record showing stable lupus nephritis, joint tenderness, and routine treatment with an emphasis on medication." R. 22.

**<u>Hand Impairments</u>**

Erika argues that the ALJ's finding that she could frequently handle and finger is unsupported by substantial evidence.

The ALJ has a duty of explanation. See <u>Piney Mountain Coal Co. v. Mays</u>, 176 F.3d 753, 762 n.10 (4th Cir. 1999) ("If a reviewing court can discern 'what the ALJ did and why he did it,'

7

the duty of explanation is satisfied.") (quoting Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs, 137 F.3d 799, 803 (4th Cir. 1998)). The ALJ must explain the findings in the decision such that a reviewing court is able to conduct meaningful judicial review. See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion") (quoting (Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [Commissioner]. . . . The [Commissioner] must present [the court] with findings and determinations sufficiently articulated to permit meaningful judicial review.").

The ALJ provided a detailed narrative discussion of Erika's medical history and the medical opinions. The ALJ concluded that Erika could frequently finger and handle despite her swan neck deformity. The ALJ stated that Erika:

> had swan neck deformity on examination and endorsed bilateral hand pain that was treated conservatively with a splint, Tylenol, and topical creams as needed. . . . Further, she occasionally endorsed some joint pain and muscle spasm, which was treated conservatively with medication. However, despite her complaints of pain, her providers encouraged her to be active and exercise regularly. . . . Together, evidence showing routine and conservative treatment and limited objective findings support a finding that the claimant could perform a range of light work consistent with the residual functional capacity herein.

R. 21–22 (internal citations omitted). Erika's swan neck deformity and joint pain were treated conservatively through Tylenol, topical creams, and a splint. See R. 297 (prescribed Tylenol and topical cream for joint pain); R. 572–74 (fitted for finger splints for swan neck deformity). As recently as November 15, 2015, Erika had no pain, tenderness, or synovitis in her fingers. See R. 583. Except for the swan neck deformity of the hands, Erika had normal strength and range of

8

motion in her hands. Additionally, Erika's physicians routinely recommended that she eat healthier and get more exercise to strengthen her muscles.

The RFC is consistent with the opinion of Dr. Bacani-Longa restricting Erika to frequent fingering and handling. No physician, treating or otherwise, limited Erika's activities because of her hand impairments, and, specifically, the medical records do not suggest that she is limited to less-than-frequent handling and fingering. Likewise, Erika has identified no evidence that shows that her hand impairments would amount to restrictions greater than those in the RFC. Because I am not "left to guess [at] how the ALJ arrived at [her] conclusions," Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), I find that substantial evidence supports the ALJ's decision to restrict Erika to frequent handling and fingering.

**Treating Physician**

Erika argues that the ALJ erred in according partial weight to the opinion of her treating physician that her lupus-induced stroke would "often" interfere with her attention and concentration. R. 371.

A treating physician's opinion which is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record" will receive controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. Id.; Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 256 (4th Cir. 2017). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's

9

consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 404.1527(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r Soc. Sec. Admin., No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam)).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

The ALJ gave the opinion of Sana F. Khan, M.D., partial weight because "records as a whole show no impairment in cognitive function, including attention, concentration, or memory." R. 22. Erika initially reported a loss of cognitive function immediately after her stroke in April 2012, when she complained of speech issues. Erika received speech therapy, and recovered her communication skills came to normal limits. Erika reported to her speech therapist that she could effectively communicate in the workplace. Erika did not report any other speech problems after she completed speech therapy in May 2012.

10

Erika also reported confusion while driving in September 2013. Erika went to the emergency room and her confusion resolved that day. A CT scan confirmed that Erika did not suffer a recent stroke.

Dr. Khan's opinion is inconsistent with the objective medical evidence. There is no evidence in the record showing that Erika has issues maintaining attention or concentration. The ALJ explained that Erika's "treatment history simply does not support a finding that [she] could not maintain regular employment if limited to a static work environment." R. 22. Likewise, Erika has identified no evidence bolstering Dr. Khan's opinion. I find that the ALJ's decision to give partial weight to Dr. Khan's opinion is supported by substantial evidence.

**New Evidence**

Erika argues that an opinion letter from her treating physician, Dr. Deal, submitted to the Appeals Council warrants remand because the ALJ was not able to evaluate it. The Appeals Council explained that Dr. Deal's opinion did not provide a basis for changing the ALJ's decision. R. 2.

On January 27, 2016, five days after the ALJ's decision, Dr. Deal wrote that Erika has swan neck deformity of digits 2–5 on each hand. R. 613. Dr. Deal explained that Erika "is able to make a composite fist but with some difficulty." Id. Dr. Deal stated that her plan is strengthening, therapy, and splinting, but that Erika "will have some difficulty using her hands to perform work activities" and may be "self-limited" based on discomfort, problems with range of motion, and problems with grip strength. Id. However, Dr. Deal did not impose any work limit restrictions on Erika. Id.

The regulations permit a claimant to submit "new and material evidence" to the Appeals Council. 20 C.F.R. § 404.970(b). Evidence is new if it is not duplicative or cumulative and

11

material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011) (citing Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). In any event, the evidence must "relate[] to the period on or before the date of the [ALJ's] hearing decision." Id. at 704–05 (citing 20 C.F.R. § 416.1470(b)).

Once the Appeals Council accepts the new evidence as it did here, the Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, the Court must reconcile its duty under Wilkins to review the entire record, including the new evidence, to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. See id. Upon review of records that were before the ALJ and were submitted to the Appeals Council, the court must determine whether substantial evidence supports the ALJ's decision and whether the submitted evidence may change the ALJ's conclusion. See Hollar v. Comm'r Soc. Sec. Admin., 194 F.3d 1304, at *2 (4th Cir. 1999) (citing Browning v. Sullivan, 958 F.2d 817, 822–23 (8th Cir. 1992)).

Dr. Deal's opinion relates back to the relevant period, as it is an opinion summarizing Erika's complaints, the treatment offered to her in September 2015, and Dr. Deal's medical opinion. However, Dr. Deal's opinion is neither "new" nor "material." Dr. Deal's opinion is duplicative of his treatment notes that the ALJ evaluated. Erika was diagnosed with swan neck

deformity and was treated conservatively with splints, medicine, and strengthening therapy. R. 570–74. Erika reported pain in her hands and difficulty grasping objects, but that she was able to make a full composite fist. Id. Dr. Deal's opinion offers nothing that the ALJ did not evaluate and does not impose any work limit restrictions, and thus, I find that there is no reasonable possibility that Dr. Deal's opinion would have altered the ALJ's decision. Accordingly, the Appeals Council did not err in finding that Dr. Deal's opinion did not provide a basis for changing the ALJ's decision.

## **RECOMMENDED DISPOSITION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Erika's claim for benefits and in determining that her physical impairments would not significantly limit her ability to do a range of light work. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Erika's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual

recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection, including a waiver of the right to appeal.

        Entered:  August 13, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge